I'm Donald Mitchell, appearing this morning for the appellants who are Grace Henzler and the other heirs of Dick George. Mrs. Henzler is in the courtroom this morning and I believe some of the other heirs are here as well. Congress enacted the Alaska Native Allotment Act in 1906 and repealed the statute in 1971. And during those 65 years, according to the government in its answer, the BLM and its predecessor agency, the General Land Office, processed applications for more than 16,000 parcels of land in Alaska. Now, obviously, mistakes would be made, particularly in the early years before the communications and transportation technologies have become what they are today. It's just changed in the 35 years since I first went into the bush as a legal services attorney. It is not the situation today and it certainly was not the situation in the 1930s. Now, the BLM has a process for correcting its errors and that process is for either an allotment applicant or that applicant's heirs to file a petition for reinstatement. When the mistake that happened in this case was identified, that's what Mrs. Henzler and the other heirs did. Since that time, they have had a very difficult experience in terms of getting the Bureau of Land Management and then the Interior Bureau of Land Appeals and then finally the district court to squarely address the merits of whether or not a mistake was made. I think on this record, it's pretty clear that a mistake was made. What was the mistake? Well, the mistake in 1930 was that there was no evidence. First of all, there's no evidence in this record that proves that Mr. George ever got the notice, that Mr. George, who was a literate, could not have written the letter. There is evidence. There is evidence that there was communication with the letter that purports to be by Mr. George. Yes, that's correct. They were questioning whether he could have written it, but I don't think he effectively questioned whether somebody else could have written it for him. Absolutely, but that's a conjecture. But be that as it may, that's not the real issue because what the district court held, get through all that, get through all that. What the district court held was that the state director only had authority to investigate this error if he concluded that in 1930 Mr. George's rights to due process had been violated and the district court concluded that there had been no due process violation. And so let's take the district court's best case. Let's forget what we were just talking about and say was there a due process violation back in 1930, even if the conjecture is correct, which is that the letter arrived at the post office, Mr. Bergman, the postmaster, then got Mr. George, read him the letter, Mr. George then dictated the letter. Let's assume that's all that happened. But does that mean we also have to assume that the letter, which is in the record, saying that Mr. George is moving to Fort Yukon, that's a forgery? No, no, I'm saying let's assume all that's true. My point is that there is a due process violation if when Mr. George wrote that letter, he did not do so in a way that was informed. We have cited in the brief the Interior Board of Land Appeals has said over and over and over again that a relinquishment of an Alaska Navy allotment is not valid unless when the relinquishment was made, the allotment applicant was aware of his or her, all of his or her legal rights at the time. And so that leaves the question of was Mr. George, in the best case of the BRM, informed at the time he wrote that letter, assuming that he wrote that letter. And the fact of the matter is they did not tell Mr. George that, in fact, if he wanted to, he had had that allotment approved for more than 10 years. If he had wanted to, he could have had a certificate of allotment issued for that ground, even though he was no longer using it as his principal place of residence. The government has admitted that. And here's what they say, and I think this is the key to the whole conversation here, and that is on page 33 of their brief, the government says, when we raise this issue, quote, given the evidence that George expressed an intention to make his home at Fort Yukon, it is not apparent why advising him that he should receive a certificate of allotment on the original tract would have been in his best interest. In other words, if there was ever a patronizing 19th century view of agency action toward a Native American, we didn't have to tell Mr. George that he had this right because we had decided that it wasn't in his best interest. Why does due process require that they tell him that? What is the general principle here? If he says, I don't want it anymore. He wouldn't know that he could have it. I would encourage him. But it's something else. No. He wouldn't have both. No. No. That's not quite right. I would like to have a lot here instead of down there. Yes. And if. What does that mean to you? The point. What does that mean to you? It means that he is an illiterate, uneducated. That doesn't mean anything about illiterate. I've given you a sentence. What does the sentence mean? It means that he is living in Fort Yukon and that he intends to live in the village. That's what it means. And I would like to have a lot here instead of down there. Right. What does that sentence mean to you? It means. Back to the same question I asked a minute ago. What that sentence means is that he is responding to the letter. Again, the best case of the government, that Mr. Bergen read him the letter and he is responding to the letter. The letter says, we're going to close your allotment. He says, that's fine with me because I've now moved to Fort Yukon. Nevertheless. He said all of that before the sentence I read. And what you don't seem to want to acknowledge is he says, I don't want that when I want one here. Isn't that what the sentence means? But the government did not tell him before he said that, that you can have your allotment down there. And by the way, if you're living in Fort Yukon, the reason the Allotment Act was enacted to begin with, if I can tell you because it came out of Sitka, it's not on this record, is that they could not, they could not, I'm sorry, the reason the town site statute was enacted for native villages was because you couldn't use the allotment statute to get land in a village itself. The only allotment land was out surrounding the bush. So sure, he moved to Fort Yukon. The point is, he was not told, which the government has admitted. What is the principle? What is the case? The case says that he nevertheless has to be told, even though he essentially has abandoned his claim to whatever land. He has not abandoned his claim. He just moved. I mean, if his allotment was approved in 1920, the government was told to go survey it. If they had surveyed it, he then would have gotten a certificate of allotment. The statute said that once he got a certificate of allotment, it says in the statute that that ground would have been his and his heirs. The heirs are even recognized in the statute for in perpetuity. He then could have left, he could have then left that ground, he could have moved to Anchorage, he could have moved to Fairbanks, he could have moved wherever he wanted to. Mr. Mitchell, I don't think you've even yet answered Judge Schroeder's question. What is it that requires the Bureau to make that notification to him under these circumstances? Because in Theodore Secklin, which is cited in an IBLA decision as representative in just one in the brief, the IBLA decisions are absolutely consistent that a native allotment relinquishment is per se void unless when that relinquishment was made, it was made knowingly. And if you read Theodore Secklin, it says that a knowing relinquishment is one that has been made after the applicant has been informed of all of his or her legal rights. And the government has conceded in this case that he was not informed of his legal rights before he sent the letter. Is that a due process? Well, notice. I mean, the very element. The IBLA decisions starting with Theodore Secklin say what I have just indicated. And the fundamental tenet, at least that I learned in law school, was that the fundamental tenet of procedural due process is actual notice of what your rights are. And that's what the IBLA decisions have said. And I have 36 seconds left, and I would like to reserve that time and rebut it. All right. And if, in fact, the court agrees with the government that Mr. George, in fact, was given adequate notice of his legal rights before he sent that letter, well, then I think the district court should be affirmed. Thank you. Thank you. We'll give you half a minute. If it pleases the Court, Brian Toth for the United States. First of all, I'd like to address a couple of points my present counsel made. A due process does not require actual notice. It requires only notice that is reasonably calculated to reach the intended recipient. There is abundant evidence in the record here that the minimal due process requirements, as this court set forth in Pence, were met here. First, notice was provided that states the specific reasons why the application was proposed to be denied. Second, the correspondence indicated that George had 60 days to protest in writing the cancellation. Those are the two basic requirements stated in Pence, and they were satisfied here. Second, the record evidence supports a conclusion that George intended not to return to the original tract, but instead wanted to stay at Fort Econ. There is no evidence contradicting that intent in the record, and the only arguments the plaintiffs make are to speculate about what is not in the record. But the assertion that mistakes were made is best responded to by the doctrine of the presumption of regularity. That's the legal doctrine that courts apply to assume the official validity of agency actions, absent some proof to the contrary. There is no affirmative proof to the contrary here in the record. All we have are speculations about what might or might not have occurred, but this is a record that is closed. There is no dispute that is based on review of the administrative record, and it's not this Court's place to speculate about what might have taken place outside the administrative record. To reiterate, there is no requirement in the Due Process Clause, as far as this Court has articulated in either of its Pence decisions or in the Silas v. Babbitt decision, that would require the government to make an inquiry as to the knowingness and voluntariness of the abandonment of the application based on the Due Process Clause. Pence seems to base his claims in that regard on some Board case law, but the District Court harmonized the Board's case law in this regard, and it stated the principle as follows, the Board and the BLM do not have authority to overturn the Assistant Secretary's decision unless there is a demonstrated violation of due process. That hasn't been shown here, unless the Court has any other further questions. What do you understand to be the holding of this Suckling case, the Department of Interior? Well, in Suckling and in other cases, the Court has applied a different statute than what's at issue here. It's applied Section 1634 of the Alaska Native Interest Lands Conservation Act. There hasn't been any contention here, but that's applicable. It dealt with applications which were pending as of the date in the statute, but this was a closed application. It had been closed prior to the date of ANILCA, so it's distinguishable from Suckling on that basis. The other Board decisions that the plaintiffs cite all seem to be distinguishable in that there was no evidence in those records that a letter was in fact sent, or in various cases letters were sent to applicants who were known to be deceased, and in that case the notice was found not to be reasonable because the government knew the applicant was deceased and no notice was given to the heirs. But those aren't the facts of this case here. Let me ask about what is it? We're supposed to rely only upon the grounds given by the agency. Correct. In this case, the Board did not speak to the due process issue at all, as best I can tell. The District Court did, but the Board itself did not. Have I missed something? No, that's accurate. Well, how can the District Court or how can we ourselves adjudicate the due process claim if the agency hasn't? Understood. Interio is capable of resolving the Pence question, the due process question, and has done so in other administrative decisions. Here we have to assume that the Board implicitly rejected it because the types of notice arguments and knowingness arguments that plaintiffs are making now were presented to the Board, and although it didn't expressly address it, it certainly could have. It was capable of expressly saying there was absolutely no due process violation here. Nothing that it did was inconsistent with its other cases. So the District Court, I understand the Court's concern. I think the District Court best attempted to harmonize the Board's various cases by stating the rule that it did. Constitutional issues are a little bit different, I think, because federal courts are obviously capable of resolving those issues in the first instance. They don't need to in every regard. The Board has certainly adjudicated the due process question in other cases, but I think the District Court's ruling best harmonizes the Board's precedent. So unless there are any further questions from the Court. Yes. Let me just, if he had wanted to pursue his, under the Allotment Act, the old Act, can you have an unlimited number of allotments? My understanding is that you can't have more than a total of 160 acres. I couldn't find it really explained. I'm just trying to understand the meaning of his saying, I want one here rather than the one that I applied for. It didn't seem clear that he couldn't have both. I believe he could have up to a maximum of 160 acres. Now, whether that's split among two parcels, three parcels, or what have you. The first application was for 460. So his statements that he did not want the lot down there, he wanted it up here. Would mean that he wants to apply for another one. Correct. And one thing I'd like to impress upon the Court is that the government does not have to rely on his handwritten response in order to demonstrate due process here. There was an investigation in the summer of 1929. It's documented in the record by the Land Office, and that's where the government got knowledge of his intent even before they sent the letter to him and the handwritten reply was returned. So for all of these reasons, we would ask that the Court affirm the District Court's decision and affirm the Board's decision. Thank you. Thank you. The appellants agree on notice having to be reasonably calculated to inform. This was not notice. They knew he was an uneducated and illiterate Athabascan Indian who could not read or write, and even if he had gotten that notice, if he'd signed for it, he couldn't read it. Now, whether he got any help on it, what all happened with that, that's outside the record. But this was incredibly unfair. Ten years after his allotment had been approved. Secondly, we do not agree with the District Court that the only way the Secretary, the State Director could have gone to the merits of this petition for reinstatement was if there was a due process violation. We've made that argument in the briefs. I didn't speak to it here because of the very limited amount of time, but it's in our briefs. Third, the government has just misrepresented the Alaska Native allotment provision that, among other things, to be self-absorbed about it, I participated with the House Committee on Interior and Insular Affairs in drafting to begin with. That is not the correct statement. And third, in answer to this. What is the misrepresentation? Well, the misrepresentation was that what we intended at the time, and what that statute says, if you read it, was to sweep within its purview all of these kinds of allotments. And this allotment was pending if, in fact, the relinquishment wasn't any good. And if you look at the whole history of what we did subsequent to 1980, we churned through, working with the BLM, hundreds if not thousands. Mr. Mitchell, I heard the government represent, to use your word, that he was entitled to a maximum of 160 acres. Is that a true representation or not? That was going to be my last statement, Your Honor. I was going to inform the court because I didn't know something about that, which is that at the time his allotment was filed and at the time of these events in 1930, the rule was that the statute says up to 160 acres and that you could not split your parcels. In other words, you couldn't take 40 acres here and 120 over there. The BLM changed that rule, I believe, in the 1950s so that you could divide it up. But, again, the point, and I'm going to get out of here, is that at the time you could not hit. Mr. George never applied for another allotment, never applied for another allotment. And that's because he lived downtown, as I understand it, in Fort Yukon. And in Fort Yukon, as a representative of the courts, not in the record, but if you look at the town site law of 1924, that that was enacted because you couldn't file for an allotment downtown. So he could have gotten title to his land back on the river. So to say that he had to pick when he wasn't informed that he had the choice is just not fair. We understand. Thank you. The matter just argued is submitted for decision. The next case on the calendar listed is Lockheed v. Holder. That case is submitted on the briefs and it is so ordered. The next case for argument is United States v. Lockwood. Thank you.
judges: Schroeder, O'scannlain, Clifton